AUSA: Janet L. Parker        Telephone: 989-895-5712
Special Agent: Christopher Whitmarsh        Telephone:
AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America,

    Plaintiff,

v.

Jeffrey W. Patrick,

    Defendant(s).

Case: 1:16-mj-30133
Judge: Morris, Patricia T.
Filed: 03-23-2016 At 09:56 AM
in re: Sealed Matter (krk)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about the date(s) of __June of 2014__, in the county of __Alpena__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 33 U.S.C. §§1321(b)(3) and 1319(c)(2)(A). | Discharge of oil into Lake Huron causing a film or sheen upon the water |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_Complainant's signature_

Christopher Whitmarsh, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: MAR 2 3 2016

_Judge's signature_

City and state: Bay City, Michigan

Patricia T. Morris, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher R. Whitmarsh, having been duly sworn, state as follows:

1.     I am employed by the United States Coast Guard, holding the position of Special Agent of the Coast Guard Investigative Service ("CGIS"). I am duly authorized to investigate violations of laws of the United States under 14 U.S.C. § 95.

2.     I have been a special agent with the CGIS since October 2009. I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program and the Special Agent Basic Training Program. As a CGIS agent I have participated in numerous criminal investigations involving violations of federal statutes and regulations. Additionally, I have over fourteen years of active duty service in the United States Coast Guard ("USCG") which includes multiple tours of duty as a certified USCG Boarding Officer. As a boarding officer I participated in hundreds of maritime law enforcement boardings.

3.     The USCG, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a) to board vessels and conduct inspections and investigations of potential violations of international and United States law.

4.     The information in this affidavit is known to me as a result of my participation in an investigation conducted by CGIS special agents, USCG

1

inspectors and investigators, and my discussions with those individuals. I am submitting this affidavit in support of a request for the issuance of a criminal complaint and arrest warrant for Jeffrey W. Patrick. As discussed below, I submit that there is probable cause to believe that Jeffrey W. Patrick has violated the Clean Water Act, 33 U.S.C. §§1321(b)(3) and 1319 (c)(2)(A), by knowingly discharging or causing the discharge of oil into or upon the navigable waters of the United States in such quantities that the discharge caused a film or sheen upon the surface of the water.

5. The Clean Water Act prohibits the discharge of oil or hazardous substances into the navigable waters of the U.S., including the Great Lakes, in such quantities as may be harmful. 33 U.S.C. § 1321(b)(3). Under U.S. EPA regulations, a harmful quantity of oil is defined to include any amount which causes a visible sheen on the water. 40 C.F.R. §110.3.

6. The Uninspected Towing Vessel ("UTV") *Victory* is a 498 gross ton towing vessel, registered under the flag administration of the United States. The UTV *Victory* operates in conjunction with the barge, *James L Kuber*, which is also registered under the flag administration of the United States. Since at least 2011, the UTV *Victory* has been engaged in international commercial maritime operations on the waters of the Great Lakes, including the transportation of cargo to U.S. ports.

7. On towing vessels such as the UTV *Victory*, bilge waste accumulates in bilge wells in the lowest part of the vessel. Periodically, this waste is pumped into a bilge holding tank. Bilge waste consists of water originating from spills and leaks from piping, tanks, and from precipitation and waves. This waste becomes contaminated with oil, oil residue, lubrication fluids, and other liquids that leak or drip from engines or pipes and hoses that run throughout the ship. To maintain bilges at safe levels, bilge holding tanks and wells must be emptied periodically. This can be done in one of two ways: (1) bilge waste can be discharged ashore to a waste reception facility or (2) bilge waste may be pumped over the side of the ship after being processed through a properly functioning oily water separator or OWS system.

8. The UTV *Victory* has an engine department headed by a licensed chief engineer. The chief engineer is assisted by a first assistant engineer. The chief and first assistant engineers are, in turn, assisted by subordinate crew members. The chief engineer reports to the master of the vessel and is responsible for the overall operations of the engine department. As such, the chief engineer is responsible for supervising daily operations; formulating and implementing engine department procedures; verifying that engine department systems, including the OWS system, are functioning properly; and ensuring that oily and other harmful or hazardous wastes are properly retained on board until disposed of properly.

9. Jeffrey W. Patrick has served as the licensed chief engineer on the UTV *Victory* at various times, including between June 24, 2014 and July 22, 2014.

10. On June 30, 2014, I learned from USCG Sector Sault Sainte Marie, Michigan, that an engine room crew member of the UTV *Victory* had reported to the USCG that unlawful discharges of oily waste had been made into Lake Huron by the *Victory*. At that time, the *Victory* was northbound in Lake Huron, in the vicinity of Presque Isle, Michigan, with Jeffrey W. Patrick serving as the chief engineer.

11. That same day, June 30, 2014, a USCG helicopter conducted an overflight of the area of Lake Huron where the discharge of oily waste had reportedly occurred. The *Victory* was located with no indication of oil product immediately around the vessel. However, upon inspection of the *Victory*'s track line or wake, two sheens were observed on the waters of Lake Huron by the personnel on board the helicopter. The first sheen was located approximately 38 nautical miles east of Cheboygan, Michigan, having an estimated size of 20 feet by 600 feet. The second sheen was located approximately 5 nautical miles east of Alpena, Michigan, having an estimated size of 50 feet by 50 feet. Both areas are within the U.S. portion of Lake Huron.

12. As a result, on June 30, 2014, USCG personnel conducted a Port State Control Inspection of the *Victory* in Hay Lake on the St. Mary's River, pursuant to

14 U.S.C. §89(a). A crew member told USCG personnel that a garden hose and large blue bucket or canister, equipped with an in-line valve, was used to transfer oily waste from the OWS to the cofferdams located under the vessel's propulsion shafts. The crew member reported that the contents of the cofferdams, contaminated with the oily waste as a result, then were emptied into Lake Huron.

13. Additionally, the crew member showed the USCG inspectors and investigators where the equipment used to transfer oily waste from the OWS to the cofferdams was stored. The crew member configured the equipment to demonstrate to the USCG personnel, including me, how the oily waste was transferred from the OWS into the by-pass system and ultimately discharged overboard. The by-pass equipment was then seized by the USCG.

14. During the boarding process, USCG personnel obtained samples from the discharge outlets for the cofferdams. Subsequent laboratory analysis on the samples revealed petroleum traces in the discharge outlets of the cofferdams. Based on my training and experience, I know that the cofferdams and the discharge outlets for the cofferdams should not contain petroleum. The cofferdams system should be isolated from the bilge system and should contain only lake water used to cool components of the engine room.

15. On July 1, 2014, I interviewed the crew member who reported the unlawful discharge through the cofferdam. During the interview, the crew member

reported seeing the equipment setup on the *Victory* to transfer oily waste from the OWS to the cofferdams on multiple occasions between mid-May and June 30 of 2014. The crew member reported seeing Chief Engineer Patrick looking at the OWS by-pass system setup and the oily water in the cofferdams in the week before the boarding on June 30, 2014. The crew member noted that the water in the cofferdams appeared to contain a sheen and oil droplets. The crew member also described seeing the first assistant engineer, Chief Engineer Patrick's immediate subordinate, manually pumping overboard oily water from the cofferdams in June of 2014.

16.   Additionally, the crew member reported that the first assistant engineer had said in the presence of the crew member that the OWS was not working properly. The first assistant engineer had explained that the crew had been decanting the bilge through a blue canister and absorbent diapers, and then discharging the remnant through the clean water cofferdams. The crew member reported that this by-pass system was used to discharge oily waste from the *Victory* because the OWS was not working properly. The first assistant engineer told the crew member to turn off the OWS and disassemble the canister and hoses of the by-pass system if the USCG ever came on board. Chief Engineer Patrick told the crew member at the start of the boarding operation on June 30, 2014 that the crew member should not say anything to the Coast Guard during the boarding.

17. On or about June 28, 2014, the crew member took photographs of the by-pass equipment while it was set-up and in use on the *Victory*. The crew member gave copies of the photographs to the USCG. The photographs show a type of by-pass system which could be used to illegally discharge oily waste water overboard, as described by the crew member.

18. Based on my training and experience, I know that first assistant engineers are required to report regularly to the chief engineer on a vessel and that the reporting obligation would include making sure that the chief engineer was aware of a problem with the operation of the OWS system. In addition, a chief engineer would be able to recognize that the by-pass system photographed by the crew member and seized by the boarding team was not ordinarily present in the engine room. A chief engineer would also understand that the function of the equipment as it was configured on the UTV *Victory* was to by-pass the OWS and its use would result in water contaminated with oil being discharged into Lake Huron and elsewhere in the Great Lakes.

19. Based upon the above, I submit that there is probable cause to believe that between at least mid-May of 2014 and June 30, 2014, in the Eastern District of Michigan, Jeffrey W. Patrick knowingly discharged and caused the discharge of oil into Lake Huron, a navigable water of the United States, in such quantities that caused a film or sheen upon the water, in violation of 33 U.S.C. §§1321(b)(3) and

1319(c)(2)(A). Accordingly, I request that a complaint and warrant for the arrest of Jeffrey W. Patrick be authorized.

SA Christopher R. Whitmarsh
U.S. Coast Guard Investigative Service

Subscribed and sworn before me this 23 day of March, 2016.

Patricia T. Morris
U.S. Magistrate Judge

8